Mr. Freund, I'd like to reserve two minutes of my time for rebuttal of the Grants in Court. Your Honors, what we have here today is not a case that should be dismissed as simply a school district's overreaction to a cute or silly phrase. Rather, the District Court's treatment of the constitutional issues raised in this case, we believe, threatens to open the school gates to a flood of cause-based marketing energized by a clever sexual double entendre that pushes the limits of propriety in public schools and poses a risk of distraction and disruption. I think it's important to keep in mind that this case involves the enforcement of a dress code that was in place, a dress code that prohibited the wearing of apparel or accessories that contained sexual double entendre, and that this was in a middle school. The kids involved here were in the 7th grade, the 8th grade, the neighborhood of 12 to 13 years old. It hardly needs to be stated, Your Honor, that this Court and many courts have recognized again and again that federal courts should exercise restraints, restraint rather, when considering issues within the purview of public school officials. We believe that the principal, Mrs. DeVitro, exercised reasonable discretion when she concluded that the message on these bracelets, not the word, not the word boobies itself, and we're not here to demonize the word boobies, but it's the phrase, it's the contextual phrase, I heart, I love boobies, when she concluded that that contained an inappropriate sexual innuendo and also, as we'll argue a little bit later on, we believe that she was reasonable in her belief that the wearing of these provocative phrases could create distraction and disruption in the public school setting. Under Frazier, that has to be an objectively reasonable decision. It does, Your Honor. It does, Your Honor. Now, your brief, though, seemed to argue for more latitude even than Frazier would grant. As I read your brief, you seem to be suggesting that the school has the right to define what is reasonable. Isn't that really for us to determine? Don't we just apply the type of objective reasonableness test that we're familiar with applying in other contexts as well? Well, Your Honor, first of all, I don't believe it was our intention to suggest necessarily that schools need to go beyond Frazier. But if Frazier contained a lot of words that you can grab a hold of, many of them need definition, which is, I think, one of the reasons why this case has a little bit more importance, I think, as I've been with this case for a year or two now than it did when it first came into my office, and that is trying to look at the margins of Frazier when you're otherwise looking at words like lewd, vulgar, or obscene. Frazier also contains words like inappropriate in the sense of something that's inappropriate in this case containing a sexual double entendre, which, as we point out in our brief, Judge Hardiman, that there are a number of federal cases. In fact, every federal case that we could find in which the court saw the phrase in question as a sexual double entendre was deemed to be appropriately regulated or prohibited under Frazier. So I don't think we're going beyond Frazier. And, moreover, If you're going to win here, it has to be Frazier, not Tinker. There's nothing in the record that would support a substantial disruption, especially in light of our recent en banc decision in the Blue Mountain case. I read both the Blue Mountain and the Layshawk case last night to remind myself of what those cases said. And I think it's important to recollect that, of course, and I believe that at least two of the court were on those opinions, that Frazier clearly did not apply in either of those cases. We think that Frazier is the correct analysis here. It's the better constitutional analysis. But I wouldn't give up Tinker. Yes, Your Honor. I'm sorry, I didn't understand. I just didn't understand what you said. You wouldn't give up what, sir? We wouldn't give up justification on the basis of Tinker either. Again, I'm very fond, as I'm sure that Tinker's tougher because you have a factual finding against you. I thought Frazier was plainly the way you had to go. Well, Your Honor, our position is that Tinker is the analysis of choice here. Tinker or Frazier? Oh, Frazier. Frazier. Clearly, Your Honor, Frazier is the analysis of choice. But what I'm saying, Your Honor, is that I wouldn't completely abandon Tinker in this situation. I'm very fond of, in the First Amendment jurisprudence, there's so many of these neat little phrases and so forth that the Court uses to describe the situation. One of them I think was used in one of the opinions that the Court just handed down was that school officials are not required to wait until the horse leaves the barn before closing the door. And in this situation, we did have, and you're right, there are some findings. I'm not sure they're really findings of fact, but we do have in the record, we have in the record that Mrs. DeVitro was made aware that there were girls complaining that boys came up to them and said, you know, I love your boobies, I want your boobies, and various things like that. Now, was this an overwhelming show of substantial disruption? No. Was there a disruption to that particular student? But I think more importantly, and again, I don't want to spend a lot of time arguing Tinker, because I think that Tinker's the wrong way to go here, but certainly within the context of what I would call kind of in middle school, which is the middle school is a witch's brew of hormones and curiosity. Within that context. Well, look, I was once part of, I believe, in seventh grade. And I may not look that way, but I was. And that's about the time that young men began to get interested, you know, in sexual things. So this case would be different if it were in college, wouldn't it? Oh, absolutely. There's no question if it were in college. Even in high school. Possibly high school. It might also, of course, you wouldn't have it on a really low grade, but on a really low grade it might be meaningless if somebody were, you know, second grade. I couldn't agree with Your Honor more. But that case could never come up. It just wouldn't happen. It would be very unlikely. You say you have to focus in, I thought, on the place where you are, because that's the audience for the bracelets. Precisely. That's the way I thought. So the question is then, is this case kind? And do we have a deference to what the school board authorities think? Of course, we also have a review of a district court. So where is our deference here? Your Honor, I think that the court has the ability to look at how the district court, the methodology that it used. And here I think that the court completely failed, completely utterly failed to give the deference that so much of the dictum in these cases suggests. Rather, what the district court did was it took a kind of semantical word-by-word analysis, opened up a dictionary and said, well, gee, boobies can be birds, boobies can be dumb people, and so forth, and then comes to the really incredible conclusion that boobies can have, on an objectively reasonable basis, could have no sexual connotation. That's certainly belied by the fact that there's a number of people here today very interested in this case. In fact, the case was covered by Playboy. In fact, the case has been on the front page of USA Today and all these things. I mean, clearly there's a sexual connotation here. And I think that part of the error that the district court made was it never accorded the discretion that the law says school officials should have in making these decisions. Otherwise, what will happen? Well, clearly they have discretion, but the tough decision we have to make is where does that discretion begin and where does it end, right? Right. So help us with the contours of the scope of that discretion. Okay. Let me see if I can do that, Your Honor. I think that with regard to this type of a situation, one of those contours, and I think perhaps the easiest to visualize is is there or is there not a sexual double entendre or a sexual nuance that is essentially the purpose of which is to be provocative and to draw attention. Certainly these bracelets, that was one of their purposes. I think the difficulty that the court, that the district court took here, and I think it was urged, if I recall the argument of the ACLU, urged that the court had to look almost semantically at every separate situation. Now, if that's the case, there, I mean, in this kind of an arena, there's going to be many more diseases coming down the line. In fact, you know, I've got a bunch of them right here. We've got testicular cancer. We've got prostate cancer. We've got, oh, gee, what's this one? What do they say? Well, they're all basically, you know, I love different body parts. This one's balls. This one's, this one is, oh, this one's feel my balls. This one is, oh, I ball cock or I heart cock. You know, all those things clearly, you know, boobies is kind of on the margin of what might be considered as vulgar. Well, that gets us to the question I'm interested in, particularly with regard to your adversary, and that is context. They focus a lot on context. Yes. One might even say that they think context is dispositive. I'd like to hear your thoughts on context and where we place context in our analysis. Well, I think the context certainly, I mean, that's basically our argument. That's what we feel that the lower, the district court failed to do. It failed to give any context. It made an isolated, semantical, almost etymological kind of examination of the words, rather than looking at the phrase, which is a message. And certainly the audience, the audience is key. And cases have taught us, like, for example, that most recently in the Morse case, it's not so important what the speaker intended here, but it's the reasonable perception that counts. And I suggest, Your Honor, Judge Greenberg, that the reasonable perception of most boys in the middle school, and, you know, maybe most boys beyond middle school, is when they say, I love boobies, they're not thinking of message of cancer awareness, which of course is the other irony. And the other reason why Tinker really isn't appropriate here is because, remember the irony about this is that this occurred, this violation occurred on Breast Cancer Awareness Day. I mean, this is not a case where any message was trying to be suppressed. This is a case in which we had a sexual suggestion, and once again this volatile witch's brew of hormones and curiosity goes in, and it certainly is reasonable to suggest that that's going to lead to distraction, it's going to lead to disruption, again, if you want to put it in Tinker. But certainly it's inappropriate, simply inappropriate, within the context of a school that's trying to promote the civility of discourse and trying to do what it can to focus on learning and to the extent possible blurt out the white noise of some of these other distractions. And there's no question that puberty, as Hartford called it, is a major distraction. So context, yes, absolutely essential. I have other school clients that didn't think it was significant enough to ban these. However, then we go back to the community tests, and this school client felt that within their community the sexual suggestion, a sexual suggestion in clothing within a middle school setting of pubescent children was inappropriate, you can call it lewd. I think if it appeals to the prairie in interest, it qualifies under Fraser. Indeed, a number of the cases have said that you look at Fraser the same way that you'd look at, you know, what is indecent, what is lewd if it appeals to the prairie in interest, which we suggest, I mean, it clearly does. And the conclusion that the district court made that it doesn't is really quite remarkable, and we think it's an abuse. So your point with regard to those other bracelets. Yes, there are different diseases, and they all have different little body parts attached to them. Right. So while all of them have benevolent objectives, each of them fall within Fraser. Absolutely. I thought myself that in this case what was being done was that a sexual suggestive notion was being used for a legitimate purpose. In other words, by doing it this way, we might cause more attention to the whole thing. It's not being done to promote, you know, the sex in itself. No, it's not. However, Your Honor, the record is also pretty full of a secondary purpose, and that is if you look in the record, all these booby bracelets are what they call co-branded. They're co-branded with commercial advertising. So there is a secondary purpose to these. We'll hear you back on rebuttal. Thank you. Ms. Roper? Good morning. May it please the Court, I'm Mary Catherine Roper. I'm here for the plaintiffs below, B.H. and K.M. I think the first thing that we need to talk about is the factual findings that were made by Judge McLaughlin. After reading a dozen depositions and hearing a full day of testimony, she made several important findings of fact, and the first was to reject the argument that the bracelets were intended to be provocative, intended to attract with a sexual message. In fact, she heard not only from the representative for Keeper Breast, who talked about their wish to express a love for one's body and self-care, which is why they use I heart and a diminutive term, boobies. I don't understand why the intent of the speaker is relevant in light of Frazer. What was Frazer's intent? Do you remember what the finding of fact was? Oh, Frazer was very clear that his intent was to be lewd. Well, no, no, no. The Ninth Circuit said that the district court found that his intent was to create a rapport with his fellow students. In other words, he wanted to get their attention so they would actually listen to what he had to say about the person he wanted elected. But he intended to do it with a lewd message, which is something the Supreme Court decision says that when questioned, he admitted that he intended the sexual innuendo in his speech. I can get you a page number. I think that's actually in our brief. That's in the Supreme Court opinion. There was a factual finding that he intended to be lewd? There was a factual finding that he admitted that he intended to be lewd, yes. Why don't you tell us where that is? I'm afraid I don't have a copy of Frazer right here, but I'll try to. I'm reading from the Ninth Circuit opinion that says, as Judge Tanner found, so Tanner was the trial judge. Tanner found Frazer did so because he thought it would be effective to establish a rapport with his fellow students and perhaps to amuse them. That was the finding. Yes, but one of the factual findings in the Supreme Court opinion is that Matthew Frazer, when questioned, admitted that he intended the speech to be lewd and to be taken as lewd. He intended the sexual innuendo in that speech, and that is at page 681, 684 in the Supreme Court's opinion, Bethel v. Frazer. Okay. Why don't you read that to us? I don't have the quote of it. I'm sorry, Your Honor. I want you to quote. You've represented that there was a factual finding that he intended to be lewd, so why don't you read to us what that finding was? I'm sorry, Your Honor. I don't have the opinion with me, but when Matthew Frazer was questioned, he admitted that he intended the lewd understanding of the speech he made. I don't think that the student's intent, it is, as Mr. Foyne says, rather the reasonable perception of what the speech says in the community. So the intent, that's what I was trying to drive at. My understanding is the subjective intent doesn't matter. If I intend the most noble of causes, and I'm a middle school student and I speak, it matters not that I had a noble intent. If what I said was lewd, vulgar, or had double entendre, or otherwise could to the reasonable person be construed as vulgar, lewd, or sexual. Your Honor, there is no question that Cohen's jacket, which intended what he viewed as political and pro-social message, but did it in a profane manner, could not be allowed or would not be allowed in a school. We have not argued, and Judge McLaughlin did not argue, that the pro-social message of these bracelets somehow rescues an otherwise lewd phrase. Instead, what she said is that that phrase, in the context in which it is presented, this is different. If you say boobies can be used lewdly, of course it can, but so can the word banana. If you say I heart boobies can be used lewdly, certainly we have heard from the district about a number of adult contexts in which that is true. We haven't heard about any context in the middle school in which that was true. But when you say I heart boobies, keep abreast, and on the back of the bracelet you've got keepabreast.org, art, education, awareness, action. In the context of that bracelet, which is a breast cancer awareness bracelet, everybody understands it to be that. You look at the phrase in context. You don't take it out of context and say how might a porn star use this phrase? Is your point that context is dispositive? I think context is necessary. I'm not sure what you mean by dispositive, but it's certainly necessary in interpreting. Is it the end of the inquiry? That's what I mean by dispositive. It informs the entire inquiry. I don't see how that you – I mean, there are many types of context in the case, right? One is that this is – Well, I guess my question is, obviously, you've just quoted us what's on the outside and inside of the bracelet. Right. So your argument is, well, clearly, since it relates to breast cancer, whatever notions of vulgarity or lewdness must fall to the wayside because the context – Your Honor, I'm sorry. That is not at all what I'm saying. Okay. I have just said – So then your point is – so then your answer to the question would be no, context is not dispositive. It's a fact. The context in which the words are used, Your Honor, the question is, what does I heart boobies keep abreast mean? When seen on a breast cancer awareness bracelet, right? I'm not talking about the context of this being part of a pro-social campaign because what you have to look at is the speech and how it will be understood in the context in which it is uttered, in the school in which it is uttered. That is what we learn from the decisions of this court. For instance, Sipniewski, redneck can be a synonym for the word hick, but the question in that case was, in the Warren Hills School District, were those students going to confuse the word redneck on a Jeff Foxworthy T-shirt as a reference to the white supremacist gang, the Hicks, that had terrorized the district? And the court said, there's no evidence that that's the meaning that's being attributed in this context. That is the application we are looking for under Fraser because Fraser simply cannot be. The only context in which... I'm sorry, the only student speech analysis in which context doesn't matter. In every other school speech context, we say... I'm sorry, every other school speech type of case, we say, what does it mean in that context? As then-Judge Alito wrote in Sachs, talking about the Hazelwood test, it is not what someone could misconstrue as school speech. It is what is reasonably viewed as school speech. Your adversary has talked about the disruption that came about, and I understand that there's admittedly, from his standpoint, a weakness in the evidence of disruption. But clearly, as per Judge Greenberg's questioning, 11-, 12-, 13-year-old boys viewing this might have a different reasonable view of what the comment means. Your Honor, this is where we have to talk about the difference between an objective and a subjective standard, all right? A subjective standard is when any of us, or Judge Crabb from Wisconsin, says, in my view, not looking at the events in the school, not looking at how this is presented or interpreted or reacted to, as the Court did in Fraser, of course, talked about the reactions and the understanding of the school students. Without looking at any of that, I divine that this is sexual innuendo. But what Judge McLaughlin has done... I thought Judge Crabb said, I divine that the reasonable school administrator could reasonably determine that, in addition to the noble and appropriate purpose, the bracelet could also, to many of the students, be taken as a double entendre and something that will be the focus of distraction and perhaps harassment for some of the kids in the school. Her specific words are, although it is a far cry from the extended metaphor for sexual intercourse in Fraser, the phrase, I heart boobies, is sexual innuendo that is vulgar, at least in the context of a middle school. She makes an ipsedixit decision about this. That's what Judge McLaughlin did not do. She looked at how it was presented. Yes, also the intent of the presenters, both Keep a Breast Foundation and the students, who, by the way, their testimony is that the word boobies is what they use in their families, how they talk with their mothers and grandmothers about their own bodies. It's not a sexual term. It's a step above wee-wee. This is... That's universal? There is no evidence that anyone, in the context of this case, thought otherwise. Even the school, when announcing the ban, had a student read aloud an announcement that said the bracelets with the words boobies in it are not allowed. Well, they had to identify... I can't understand that. They had to identify what they were talking about. Well, they certainly could have said the bracelets from the Keep a Breast Foundation are not allowed. I'm not sure... But they're allowing the bracelets from the Keep a Breast Foundation. As long as they don't have the... I thought they're allowing them as long as they don't have the I heart boobies on. That is a change they made during the course of litigation. Indeed, these school officials have offered... I mean, it's hard to say the school district isn't fully behind conquering breast cancer. They had a whole awareness month, right? I mean, they've... We're not really talking about any sort of content discrimination or viewpoint discrimination. It really is the manner in which the cause is advocated. And they're saying, we're going to fight breast cancer in myriad ways, but we're not going to have the students reference it in this one way. Actually, Your Honor, one of the factual findings of Judge McLaughlin was that the school district's contention that these bracelets were lewd was a post-hoc rationalization. What the school district really wanted to do was to decide what was appropriate, and they preferred to channel the students into what they thought was a more appropriate breast cancer awareness campaign, the Susan G. Komen wear pink, et cetera, type of approach. Now, Judge McLaughlin makes a finding that there was essentially viewpoint discrimination in one footnote in her opinion. I'm not sure that matters. Pretext is always illegitimate under the First Amendment, and it is... And in this case, it is pretext for an impermissible exercise of school authority. That is a decision that the school is going to decide what is appropriate. So there is no context, in your view, or no manner in which I heart boobies falls within Frazier? Certainly. I heart boobies can be used in a sexual way. It could be presented in a sexual way with illustrations and so on. So could I heart bananas, I heart screws, I heart pickles, a discussion of the relative hardness of minerals within the school science curriculum. We cannot define the First Amendment by the point at which a 13-year-old boy blushes or giggles. Why can't school administrators use their judgment to determine what is going to distract their students, what's going to intimidate their students? I mean, there was a little bit in the record about some girls being harassed by boys, specifically with reference to the word and the bracelet. There was one documented and one sort of rumored episode of boys saying something to girls about their boobies. That, under Tinker, of course, is not substantial material disruption because that doesn't come anywhere near the kind of disruption that a school can't control. I'm not suggesting it might satisfy Tinker. I'm saying why wouldn't it come within the ambit of what's regulable under Frazier? What about the girls in the school who are more modest and less edgy, who aren't comfortable wearing the bracelet, but all their friends are? There are many different potential variations here, aren't there? And these are all the things that then-Judge Alito said cannot form the basis of a First Amendment decision when he wrote Sachs v. State College Area School District. Now, his analysis there was primarily under Tinker, but there is no First Amendment realm, not true threat, not promotion of illegal drugs, not substantial material disruption, where this amorphous, it could be a bad thing, is enough to justify censorship of speech. No, it's not could be a bad thing. We have to focus on the language of Frazier, don't we? Frazier talks about lewd, vulgar, and it does use the word inappropriate, I think, and who knows, what's inappropriate to one might be perfectly fine to another. I think we can all agree on that. And I think that's narrowed, again, by then-Judge Alito in the Sachs opinion where he says Frazier, there are a lot of words in Frazier, of course, but what Frazier bans is the offensively lewd and profane, those words that offend for the same reason that obscenity offends. What word did Frazier use that was lewd? His was a graphic sexual innuendo. What word did Frazier use that was lewd? He didn't use a single word that was standing by itself lewd. What word did he use that was vulgar? He did not use a single word that was standing by itself vulgar. It was the implication, right, that some students thought it was describing in graphic detail a sex act, some students were clueless and didn't know what he was driving at, other intellectual students might have thought, oh, he's just trying to get our attention so we'll actually listen to what he has to say instead of talking amongst ourselves. The reactions were multifarious, weren't they? The reactions were immediate and general. I'm sorry, I see a red light, Your Honor. May I finish? The contrast in this school is that we had two isolated incidents, one that didn't even happen until after the ban. If you're going to talk about what the reasonable perception is, you have to look at the context because that's what we do in every school. Doesn't that get to Judge Greenaway's question about the horse or maybe it was your adversary's answer to the question about the horse leaving the barn? Does the administrator have to wait for the problem to ensue before shutting down what he or she deems to be lewd, vulgar, double entendre, sexual, etc.? No, Your Honor. If a student walked in with Cohen's jacket or if a student walked in with a jacket that did not use an F-bomb but instead had some very explicit and graphic reference to sex connected to the draft or whatever else the student was prohibiting, the question is how do you read that? It cannot be simply, I could think of a way that that could be lewd, which is what the school district does. I can think of adult contexts in which that could be lewd. The question is, is the presentation and reception here reasonably viewed as lewd and what it is entirely, when it's presented in the way that Judge McLaughlin found here, a familial, juvenile presentation of this, it's about breast cancer, it's about love and self-care, and even the school district. So the other bracelets Mr. Freund mentioned, they're coming in too, they're allowed too. I haven't said anything about those bracelets. We can't distinguish between testicular cancer or prostate cancer and breast cancer. Your Honor, once again, neither Judge McLaughlin nor appellees have ever argued that this is a lewd phrase that is rescued by its inclusion in a pro-social campaign. That is not our argument, that is clearly not the case. Cohen's jacket is a profane phrase. I'm not asking about Cohen's, I'm asking specifically about the bracelets to which he referenced in oral argument. How could they possibly be excluded if we say that the First Amendment prohibits the school district from making this judgment call? Because this is, the decision that the district court made and that you are reviewing is about the presentation of a message in the context of the Eastern Area Middle School. It does not make any decision, and Judge McLaughlin made this clear, about other messages, about other presentations. That's why I'm asking you the question. I just asked the question for that very reason. The legal decision. If a school district doesn't have the latitude to make a judgment call that this bracelet at issue in this case has a sexual double entendre, how in the world could it be allowed to make the judgment call that the bracelets that Mr. Freund mentioned are also prohibited? I'm not familiar. He just read them. No, I understand. A momentary reading of them. Those bracelets could be... Well, let me give you a hypothetical. Sure. That has everything to do with his, but since you don't have his in mind, I think one of the things he talked about was prostate cancer. Mm-hmm. Okay? Suppose there was a bracelet that said, I heart penis, or I heart prostate, or fill in the blank. Keep a prostate, save a prostate, whatever you want. Once in a middle school context, you got past the giggling, I would think, on both sides of the gender aisle. Is that any different than your case? I don't see that that... I don't see... Your hypothetical has not presented me with any evidence that that is intended or understood as a sexual message. I heart penis. Right. Okay. The I heart penis, you know, in the context of a cancer awareness campaign. Right, absolutely. Right. Okay. I don't really understand why I... No, I don't think that that would be reasonably understood as a sexual statement. But if it said, the one he read that said, feel my... Feel my balls. Feel my testicles, you agree that that can be banned? That one might well be presented in a sexual manner. I mean, depending on what the whole of the presentation is. Well, the presentation is, kids are wearing it on a bracelet. As part of a breast cancer... On a bracelet. I mean, sir, as part of a cancer awareness campaign. Testicular arrhythmias week, day. So you agree that can be banned? That probably could be viewed as a sexual innuendo. And if these girls had been wearing shirts or bracelets that said, feel my boobies, I think that we would have a very different case here. So it's not about the boobies word, it's about the modifier. No, it's about the entire presentation. I heart boobies. The word heart, you know, the heart graphic is not something that connotes a sexual attraction under most circumstances. Under whose circumstances? Well, it's certainly not inherently a sexual... I mean, it originated with I heart New York. You see somebody's bumper sticker says, I heart Huskies, I heart my docs. But your point is, I heart boobies doesn't in any way have a sexual connotation? My statement is, I heart boobies keep abreast, as presented by these students, has no sexual connotation to it. Okay, all right. I just had a technical question. Yes. This is an appeal from a preliminary injunction. Correct. But the way I looked at it, this is actually the whole case. In other words, if we reverse this, there really isn't anything left. And if we affirm it, there's no defense. The way I saw it. Am I wrong? Your Honor, there are some claims that we didn't advance in the context of the preliminary injunction motion having to do with the dress code prohibiting things that are in poor taste and things like that. If indeed this court makes a finding of law that these bracelets are inherently sexual, that's probably going to end the case for us. We would make the finding that the school board could make that finding. I'm sorry. The court would make the finding that I would think that the school district reasonably did make that finding, which is, of course, counter to the factual findings. That's very different than what you started with. It is, Your Honor. I misspoke. If the court said that the school district reasonably did, not could, I think that's the difference between the subjective and the... But reasonably did find these bracelets to be a sexual double entendre, despite them leaving them in the school for two months and all the other circumstances that Judge McLaughlin cites in making her finding of pretext, that would probably leave us very little to do back in the trial court. It really depends on how this court deals with it. Thank you, Ms. Rocha. Thank you. Mr. Foyne. Just one thing, Mr. Foyne. Yes, sir. I'm going to use the word. I assume you're willing to concede that if we reverse this, there's nothing left. Your Honor, I was just about to address that. I thought about that on the way down. There's not much left. I don't know what would be left.   I think this is pretty much the ballgame. I think this is pretty much the ballgame. That said, speaking of ballgames, with regard to the plaintiff's argument here that the proper focus is on what words are an issue themselves rather than the judgment of school officials. I made this argument before the district court, this analogy, because I happened to think of it, and it reminded me of when they put magistrate judges at Veterans Stadium. And I suggested that if that's the approach, rather than judging the sound discretion of school officials, if every of these cases is going to be looked into semantically, then we're going to need constitutional magistrates in every school to make that decision. I just want to make a couple of real quick points, and I'll make them bullet-wise. You know, with regard to the argument about intent here, I think Judge Hardiman... I'm sorry, Your Honor. Well, the purpose was to overstate, Your Honor, but the point of it is that I was trying to emphasize the notion that what should be focused on here, and I think what the district court failed to focus on, was whether or not the school officials had acted reasonably rather than, in effect, doing a semantic dissection of the phrase. What about Ms. Roper's pretext argument? I mean, did the school err here by failing to act promptly enough or by picking the wrong reason for banning the bracelets? I think so, Your Honor. You know, the point I have here is that, you know, I've never seen credibility to be an issue in a First Amendment case, and either they have the ability to do this or they don't. I think, very frankly, that to the extent that there was a modification in how they viewed it, it was a function of the fact that when this case came to me, I said, well, this is a clear case under Fraser, and they were worried more about disruption. But I don't see credibility being an issue here whatsoever. I think the important thing is whether or not they had the constitutional authority to make a judgment, and I would completely dismiss the argument that, gee, I guess they got the wrong reason the first time. I mean, that's like putting them to the task of saying, well, gee, your decisions in this regard now must come with constitutional citation. So I don't give that argument any moment whatsoever. So even if they ban it for the completely wrong reason, you're arguing that the law can still save that inaccurate decision as long as it's objectively reasonable? I think that there are reasons that could be improper. For example, you know, unlawful discrimination. Let's say they made a call under Tinker and it was wrong. Let's say they ban it and they say, we're going to ban this under Tinker, but there's really very thin evidence of substantial disruption. Can they be saved by Fraser? I think that's pretty much what happened here. I mean, to the extent that I'm not sure whether or not when the case – when I was first introduced to the case, the client didn't come to me and say, gee, you know, we banned this under Tinker or we banned this under Fraser. They came to me and said that this is inappropriate for our school and we have girls that were complaining. That's what happened. So in the sense of could they have the wrong citation? Perhaps. But there again, I think that underlying the entire argument of both counsel here is the question of what really needs to be measured by the court in these cases. And, you know, is it reasonable discretion and can that reasonable discretion still be right if it's objectively made and has an ultimate legal justification? Or does it really make any difference whether or not they had the wrong constitutional theory but the right result? I just don't see credibility as being important. And just finally, with regard to intent, I think that Morris really put the kibosh on that. I mean, poor Mr. Frederick in that Morris case. He couldn't get out of it even because he testified, listen, it's just gibberish. Give me a break. And the majority there said, no, it doesn't matter whether it was gibberish or not. It's the person who hears this. And finally – We understand your argument. Yeah. And finally, we've asked that the court vacate this. Okay. Yes, sir. Okay. We're fine. Thank you, Mr. Floyd. Thank you, Ms. Roper. The case was exceedingly well briefed and well argued. The court will take the matter under advisement. Thank you.